UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 25-4 (LMP/LIB)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**GOVERNMENT'S TRIAL BRIEF**

ERIC SCOTT PETERSON,

    Defendant.

On Tuesday, December 14, 2024, Defendant Eric Peterson drove home while intoxicated after consuming seven shots of alcohol at the Fortune Bay Casino on the Bois Forte Indian Reservation. But, before he made it home, Mr. Peterson struck and killed Amanda Boshey, a 38-year-old mother of five.

Accordingly, on July 1, 2025, a federal grand jury issued a second superseding indictment charging Mr. Peterson with two counts of criminal vehicular homicide: (1) Criminal Vehicular Homicide-Under the Influence, in violation of Minn. Stat. § 609.2112, subd. 1(2)(i); and (2) Criminal Vehicular Homicide-While Having an Alcohol Concentration of 0.08 or More as Measured within Two Hours of the Time of Driving, in violation of Minn. Stat. § 609.2112, subd. 1(4).

## ANTICIPATED FACTS AT TRIAL

*A.  Drinks at Fortune Bay Casino*

After getting off work around 5:00 p.m. on Tuesday, December 14, 2024, Mr. Peterson stopped home, changed clothes, and then drove to the Fortune Bay Casino to gamble and drink. He did not eat dinner at home. And he did not eat anything at the Casino. Instead, Mr. Peterson played slot machines and drank.

In less than two hours, Mr. Peterson ordered four separate drinks containing seven shots of alcohol:

- <u>5:44 p.m.</u>: Rum and Coke—Captain Morgan "long pour" (i.e., double-shot)

- <u>5:59 p.m.</u>: Rum and Coke—Captain Morgan "long pour" (i.e., double-shot)

- <u>7:00 p.m.</u>: Rum and Coke—Captain Morgan "long pour" (i.e., double-shot)

- <u>7:29 p.m.</u>: Rum and Coke--Captain Morgan (i.e., single-shot)

After finishing his final drink, Mr. Peterson left the Casino at 8:46 p.m. Surveillance cameras for the Casino's parking lot show that when Mr. Peterson left the Casino, both headlights on his blue Dodge Durango were working, and there was no identifiable damage to the SUV.



B.   *The Accident*

Around the same time Mr. Peterson left the Fortune Bay Casino, Amanda Boshey walked out of a relative's house and headed home on foot. Multiple drivers called 911 and reported seeing Ms. Boshey, who appeared intoxicated and was walking in the middle of Lake Vermillion Reservation Road, just southwest of the Casino.

For his part, Mr. Peterson was on his phone. Despite being both behind the wheel and intoxicated, Mr. Peterson activated his phone and checked his messages—at 8:51 p.m., his ex-girlfriend sent him a text message with a link to a TikTok video titled, "Cat Rules."

Mr. Peterson then struck Ms. Boshey with his vehicle. Ms. Boshey was thrown from the road, into the ditch. The front of the Durango was badly

damaged. The front-right headlight was knocked out, and debris from Mr. Peterson's Durango scattered across the road.



Despite striking Ms. Boshey with the full force of his Durango and sending her spiraling into the ditch, Mr. Peterson did not stop. He did not pull over. He did not check to see if Ms. Boshey was okay. He did not call 911 and report the accident.

Instead, Mr. Peterson continued driving home. On the way, Mr. Peterson stopped at a gas station and picked up cigarettes.

Once home, Mr. Peterson texted his ex-girlfriend, "I hit sumthing." She asked what he meant, and Mr. Peterson responded, "I heat a fucking dear..fuck" [typos in original].

C. *The Interview*

After responding to the crash scene and identifying Mr. Peterson through surveillance footage from the Casino, law enforcement went to Mr. Peterson's home in the early hours of Wednesday, December 15. Federal agents gave Mr. Peterson a *Miranda* warning, and Mr. Peterson waived his rights and agreed to speak with law enforcement.

During the interview, Mr. Peterson confirmed that he was at Fortune Bay Casino earlier that night and had multiple drinks. According to Mr. Peterson, he did not eat dinner that evening—he last ate at lunchtime around 11:30 a.m.—and did not drink anything after returning home.

Recounting the drive home, Mr. Peterson first made no mention of an accident—he said he left the Casino, stopped and picked up a pack of cigarettes, and continued home. After officers noted the broken headlight on Mr. Peterson's Durango, Mr. Peterson said, "I think I hit a deer." He later asked, "Did I hit somebody?"

Mr. Peterson provided verbal consent for a blood draw for purposes of a blood alcohol concentration analysis. He was taken to a medical facility, and law enforcement obtained a blood sample.

D.  *Blood Alcohol Concentration*

Mr. Peterson's blood sample was taken at 5:21 a.m. on December 15, 2024—that is, approximately eight-and-a-half hours after he left the Fortune Bay Casino and struck and killed Ms. Boshey. Analysis of the sample indicated that at the time of the blood draw, Mr. Peterson had an alcohol concentration of 0.044.

Forensic Scientist Ashley Mack of the Minnesota Bureau of Criminal Apprehension ("BCA") performed a retrograde extrapolation on the alcohol concentration of Mr. Peterson's blood sample. She concluded that at 10:48 p.m. on December 14, 2024 (i.e., two hours after Mr. Peterson left the Casino), he would have obtained an alcohol concentration of 0.109 to 0.207. Based on the BAC recording of 0.044 at 5:21 a.m., FS Mack concluded that at 8:49 p.m. (i.e., when Mr. Peterson left the Casino), he would have obtained an alcohol concentration of 0.129 to 0.257. Additional analysis accounting for when Mr. Peterson consumed his final drinks established that at time he left the Casino, Mr. Peterson's alcohol concentration would have been between 0.079 and 0.217.

E.  *The Autopsy*

On December 15, 2024, Dr. Rebecca Asch-Kendrick of the Midwest Medical Examiner's Office performed a post-mortem autopsy on Amanda Boshey. Dr. Asch-Kendrick identified extensive blunt force injury.

6

Specifically, Ms. Boshey suffered a spine fracture—her spinal cord was severed just below the neck—as well as fractures to her pelvic bone and right femur.

Dr. Asch Kendrick concluded that the cause of death was multiple blunt force injuries due to Ms. Boshey being a pedestrian struck by a motor vehicle.

## EVIDENTIARY AND LEGAL ISSUES

As with every trial, it is the government's burden to establish Mr. Peterson's guilt of the offenses beyond a reasonable doubt. The government will endeavor to efficiently establish the elements of the offenses alleged, while ensuring that its presentment provides sufficient context for jurors to make an informed determination regarding the facts. To ensure an efficient presentation of the evidence, counsel for the parties are actively discussing multiple potential evidentiary stipulations. That said, the government raises three issues for the Court's consideration: (a) state law prohibitions on raising contributory negligence as a defense; (b) the admissibility of "spark of life" evidence; and (c) the anticipated expert testimony.

A.  *Contributory Negligence Not a Defense*

As discussed in the government's motions in limine, under Minnesota law,[1] the contributory negligence of a victim is not a defense in vehicular

---

[1] The instant case involves Minnesota state charges of criminal vehicular homicide adopted as federal crimes under the General Crimes Act and Assimilative Crimes Act. Accordingly, the relevant caselaw on the issues before the Court is derived from Minnesota state law.

homicide cases. *See State v. Munnell*, 344 N.W.2d 838, 887–88 (Minn. App. 1984). When the basis for criminal liability includes negligence (e.g., Count 1), "a victim's negligence is relevant on the questions of whether the defendant was negligent, and, if so, whether that negligence was the proximate cause of the victim's injuries." *Id.* That does not, however, grant the defendant license to seek acquittal solely on the basis of any negligence of the victim. Accordingly, any evidence and argument concerning negligence of the victim must be narrowly tailored to the limited purposes prescribed by Minnesota courts.

B.  *"Spark of Life" Evidence*

In its case-in-chief, the government intends to offer testimony from law enforcement officers who responded to the scene or otherwise participated in the investigation, expert witnesses who conducted forensic or scientific testing as part of the investigation, and lay witnesses with direct, firsthand knowledge of facts material to the charged offenses. Additionally, the government intends to offer into evidence limited biographical information about Amanda Boshey along with a single photograph of Ms. Boshey. Such "spark of life" evidence, when offered in this limited capacity, is admissible.

"Spark of life" evidence is evidence of "limited biographical information about a victim to present the victim as a human being." *United States v. Broussard*, 589 F. Supp. 3d 1031, 1038 (D. Minn. 2022); *see also State v.*

*Graham*, 371 N.W.2d 204, 207 (Minn. 1985) (discussion of "victim's personal life" in opening statement, though "not strictly relevant to the issue of who murdered the victim," was permissible to show the "victim was not just bones" but "was imbued with the spark of life"). Recognizing that "Minnesota courts permit such evidence in criminal prosecutions 'so long as it does not invoke undue sympathy for the victim or inflame the jury,'" courts in this district have held that "limited" spark of life evidence "falls within the purview of admissible evidence." *Broussard*, 589 F. Supp. 3d at 1038 (*quoting State v. Morton*, 701 N.W.2d 225, 236–37 (Minn. 2005)).

Here, the government intends to introduce "a single photograph of [the] deceased victim (depicted as a live adult)" and plans to call "a family member" to offer "limited biographical information" of the victim. *Id*. The government will refrain from eliciting "detailed personal stories" of the victim, *United States v. Broussard*, 87 F.4th 376, 379 (8th Cir. 2023), and will instead be mindful to limit its questioning to avoid invoking "undue sympathy" or "inflam[ing] the jury." *Broussard*, 589 F. Supp. 3d at 1038. Such "limited evidence" falls "within the purview of admissible evidence under 'spark of life' jurisprudence." *Id*.

C. *Expert Testimony*

As noted above, the government intends to call several expert witnesses in its case-in-chief. The government informed Mr. Peterson that absent stipulation, it intends to call the following witnesses:

- Forensic Scientist Ashley Mack, BCA
- Forensic Scientist Marcy Plaza, Federal Bureau of Investigation
- Sergeant Jesse Anderson, Minnesota State Patrol
- Dr. Rebecca Asch-Kendrick, Midwest Medical Examiner's Office

Forensic Scientist Ashley Mack works in the Toxicology Section of the BCA's forensic laboratory in St. Paul, Minnesota. As discussed, FS Mack conducted the retrograde extrapolation on the alcohol concentration of Mr. Peterson's blood sample. She will testify about her analysis and conclusions—specifically, her findings as to Mr. Peterson's alcohol concentration both when he left Fortune Bay Casino and two hours after.

Forensic Scientist Marcy Plaza has been a forensic examiner with the FBI's DNA Casework Unit at the forensic laboratory in Quantico, Virginia, since 2016. FS Plaza will offer expert testimony on forensic DNA testing and the forensic DNA examinations she conducted in this case—specifically, her findings as to Ms. Boshey's DNA in the blood samples taken from the fender, quarter panel, and exterior hood of Mr. Peterson's Durango.

Sgt. Jesse Anderson of the Minnesota State Patrol is a Certified Crash Reconstruction Specialist. Sgt. Anderson will offer expert testimony of the fatal crash reconstruction analysis he conducted in this case.

Dr. Rebecca Asch-Kendrick has been an Assistant Medical Examiner with the Midwest Medical Examiner's Office in Ramsey, Minnesota, since July 2017. She attended medical school at the Rutgers New Jersey Medical School (previously the University of Medicine and Dentistry of New Jersey) and completed her residency in both anatomic pathology and clinical pathology at the Johns Hopkins Hospital in Baltimore, Maryland, and subsequently completed a fellowship in forensic pathology at the office of the Medical Investigator in Albuquerque, New Mexico. She will offer expert testimony about the processes and procedures for performing autopsies. She will also offer expert testimony the autopsy she performed on the deceased victim and her conclusions about the cause and manner of death. *See United States v. Montgomery*, 635 F.3d 1074, 1096 (8th Cir. 2011) (discussing admission at trial of medical examiner testimony regarding autopsy and cause of death).

## TRIAL COUNSEL

The United States will be represented at trial by the following Assistant United States Attorneys:

>Garrett S. Fields
>316 Robert St., Suite 404
>St. Paul, MN  55101
>Tel:  612-664-5600
>garrett.fields@usdoj.gov
>
>David M. Classen
>300 S. 4th St., Suite 600
>Minneapolis, MN  55415
>Tel:  612-664-5600
>david.classen@usdoj.gov

## LENGTH OF TRIAL

The government anticipates that its case-in-chief will last one-to-two days.

Date: March 11, 2026

Respectfully submitted,

DANIEL N. ROSEN
United States Attorney

BY: /s/ *Garrett S. Fields*
GARRETT S. FIELDS
DAVID M. CLASSEN
Assistant U.S. Attorneys