# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ERIC SCOTT PETERSON,

Defendant.

Case No. 25-cr-0004 (LMP/LIB)

**ORDER ON
MOTIONS IN LIMINE**

Garrett S. Fields and David M. Classen, **United States Attorney's Office, Minneapolis, MN**, for Plaintiff.

Jean M. Brandl, **Office of the Federal Defender, Minneapolis, MN**, for Defendant.

Defendant Eric Scott Peterson is indicted on two counts of criminal vehicular homicide: (1) Criminal Vehicular Homicide—Negligence and Under the Influence, in violation of Minn. Stat. § 609.2112, subd. 1(2)(i); and (2) Criminal Vehicular Homicide—While Having an Alcohol Concentration of 0.08 or More as Measured within Two Hours of the Time of Driving, in violation of Minn. Stat. § 609.2112, subd. 1(4).[1]  ECF No. 39. Trial is set to begin April 10, 2026, and a pretrial conference was held March 25, 2026, where the parties argued motions in limine.  ECF Nos. 57, 59–62.

---

[1]     These charges are brought pursuant to the General Crimes Act, 18 U.S.C. § 1152, which "creates federal jurisdiction over crimes committed by non-Indians against Indians in Indian country," *United States v. Billadeau*, 275 F.3d 692, 694 (8th Cir. 2001), and the Assimilative Crimes Act, 18 U.S.C. § 13, which provides that "when conduct which would violate state law occurs on federal land, the relevant state law is assimilated into federal law unless there is already applicable federal law," *Billadeau*, 275 F.3d at 694.

The United States alleges that on December 14, 2024, Peterson visited the Fortune Bay Casino on the Bois Forte Indian Reservation, where he consumed four drinks containing seven shots of alcohol.  ECF No. 56 at 2.  The United States alleges that Peterson left the casino at approximately 8:46 p.m. and began driving home.  *Id.*  According to the United States, while on his way home, and while still on the Bois Forte Indian Reservation, Peterson struck A.B. with his vehicle while A.B. was walking in or on the side of the road.  *Id.* at 3.  Peterson continued driving home, and A.B. died from her injuries.  *Id.* at 4, 6.  Based on blood testing taken approximately eight hours after Peterson allegedly hit A.B., the United States' expert estimates that Peterson's blood alcohol content was between 0.079 and 0.217 at the time he left the casino.  *Id.* at 6.

## I.      Peterson's First Motion in Limine/United States' First Motion in Limine[2]

Peterson first seeks to introduce evidence of A.B.'s blood alcohol content and presence of methamphetamine in her system at the time of her death, along with testimony from eyewitnesses who will testify that they saw her "acting erratically and walking in the road shortly before she died."  ECF No. 59 at 1.  The United States does not dispute that Peterson may introduce the eyewitness testimony, but it argues that evidence of A.B.'s intoxication and any related testimony is inadmissible under Federal Rule of Evidence 403.  ECF No. 57 at 2–5.  The United States argues that under Minnesota law, the "contributory

---

[2]      The United States filed its motions in limine in a single, consolidated filing.  ECF No. 57.  The United States is reminded of the Court's general practice, reflected in the Trial Notice and Pretrial Order entered in this case, that "each motion in limine must be a separate filing" and must be limited to "a single, discrete issue."  ECF No. 53 at 1.

negligence of the victim is not a defense in a criminal prosecution." *State v. Munnell*, 344 N.W.2d 883, 887 (Minn. Ct. App. 1984).

The United States is correct that Minnesota law does not allow a defendant charged with criminal vehicular homicide to offer evidence of a victim's intoxication as a complete defense to guilt. Like Peterson, the defendant in *Munnell* was charged with criminal vehicular homicide. *Id.* at 885. At trial, the defendant requested that the jury be instructed that fault of the victim is a defense to criminal vehicular homicide. *Id.* The Minnesota Court of Appeals squarely rejected that argument. *Id.* at 888. But the Minnesota Court of Appeals further observed that "a victim's negligence is relevant on the questions of whether the defendant was negligent, and, if so, whether that negligence was the proximate cause of the victim's injuries." *Id.*

In that vein, in *State v. Nelson*, the defendant was charged with criminal vehicular homicide and sought to introduce evidence of the victim's intoxication at the time of the offense. 806 N.W.2d 558, 561 (Minn. Ct. App. 2011). The district court excluded evidence of the victim's intoxication, and the defendant was convicted. *Id.* at 561–62. The Minnesota Court of Appeals reversed the conviction, holding that the district court abused its discretion in excluding evidence of the victim's intoxication.[3] The court noted that

---

[3]   The evidence of the victim's alcohol consumption in *Nelson* appears to be similar to available evidence regarding A.B.'s alcohol consumption in this case. There, any evidence of the victim's alcohol consumption, including a blood alcohol content measured at 0.15 following the accident, was excluded, along with testimony of witnesses who had told police that "[the victim] was so inebriated earlier in the evening that friends had convinced him to leave his vehicle at the bar." *Nelson*, 806 N.W.2d at 561.

3

although contributory negligence is not a defense to criminal vehicular homicide, the victim's intoxication "was relevant to the issue of causation," given that "[t]he particular acts of negligence of both parties preceded their unfortunate collision." *Id.* at 563.

Read together, *Munnell* and *Nelson* allow a defendant charged with criminal vehicular homicide to offer evidence of a victim's intoxication so that the jury may weigh it when considering the defendant's negligence and questions of proximate cause. *See State v. Senser*, No. A12-1402, 2013 WL 3155421, at *13 (Minn. Ct. App. June 24, 2013) (holding that, under *Nelson*, a victim's intoxication in a criminal vehicular homicide case "may be relevant . . . if the record shows that the victim's behavior contributed to the accident").

*State v. Condon* is not to the contrary. No. C2-99-1258, 2000 WL 622259 (Minn. Ct. App. May 16, 2000). In that case, there was no evidence that the victim's intoxication "turn[ed] aside the natural sequence of events so as to produce a different result than would have otherwise followed from [the defendant's] negligence." *Id.* at *2. Here, there is evidence that A.B. was "acting erratically and walking in the road shortly before she died," ECF No. 59 at 1, so her behavior may have "contributed to the accident," *Senser*, 2013 WL 3155421, at *13. And, to the extent that there is any conflict between *Condon* and *Nelson*, the Court elects to follow *Nelson*, as it is both more recent and a precedential decision of the Minnesota Court of Appeals, while *Condon* is an older, nonprecedential opinion. *See State v. Chauvin*, 955 N.W.2d 684, 690 (Minn. Ct. App. 2021) (explaining that nonprecedential decisions of the Minnesota Court of Appeals are "not binding authority,"

while precedential opinions are "binding" on the Minnesota Court of Appeals and district courts).

At the motions hearing, the Government alternatively argued that Peterson should be limited to presenting evidence that A.B. had alcohol in her system at the time she died and should be foreclosed from eliciting A.B.'s precise blood alcohol content. But there is a significant difference between one's behavior with a blood alcohol content of 0.02 and one's behavior with a blood alcohol content of 0.20. Without knowing how intoxicated A.B. was at the time of her death, the jury will be unable to assess how A.B.'s "decisions and conduct were affected by [her] consumption of alcohol." *Nelson*, 806 N.W.2d at 563. While the Court solicited suggestions from the parties and has considered other ways to present the evidence, ultimately, there does not appear to be a more accurate and succinct way to share this information with the jury than A.B.'s blood alcohol content itself. The probative value of A.B.'s blood alcohol content is therefore not "substantially outweighed by a danger" of unfair prejudice. Fed. R. Evid. 403.

Accordingly, the Court **DENIES** the United States' first motion in limine and **GRANTS** Peterson's first motion in limine and will allow Peterson to introduce evidence of A.B.'s intoxication as relevant only to the questions in Count 1 of whether Peterson was negligent, and, if so, whether that negligence was the proximate cause of the decedent's injuries. That said, the Court will limit Peterson to eliciting only (1) A.B.'s blood alcohol content and (2) the presence (not the level) of methamphetamine in A.B.'s blood. Such

evidence is still subject to the strictures of Federal Rule of Evidence 403;[4] the Government, therefore, is free to object during trial if presentation of this evidence becomes unduly prejudicial, confusing, or cumulative.

## II.   Peterson's Second Motion in Limine

Peterson next moves to preclude the United States from offering "spark of life" evidence at trial.  ECF No. 60.  "Spark of life" is a Minnesota evidentiary doctrine that allows the introduction of "limited biographical information about a victim to present the victim as a human being."  *United States v. Broussard*, 589 F. Supp. 3d 1031, 1038 (D. Minn. 2022) (citation omitted).  Although such evidence is not "strictly relevant to the issue of who [killed] the victim," the evidence is permitted under the theory that the "victim was not just bones and sinews covered with flesh, but was imbued with the spark of life." *State v. Graham*, 371 N.W.2d 204, 207 (Minn. 1985).  A prosecutor therefore has "some leeway to show that spark" so long as the evidence is "not an attempt to invoke any undue sympathy or inflame the jury's passions."  *Id.* (citation omitted).  The United States explains that it intends to offer a single photograph of A.B. (depicted as a live person) and plans to call a family member, A.B.'s mother, to offer limited biographical information of A.B.  ECF No. 56 at 9.

---

[4]   The Court understands that this testimony would come in through the Medical Examiner, Rebecca Asch-Kendrick, M.D., or through a stipulation between the parties but not through the introduction of the toxicology report.  That manner of presentation also limits the possibility of any unfair prejudice to the United States.

As an initial matter, federal evidentiary rules, not Minnesota evidentiary rules, apply in this case. *See United States v. McMillan*, 820 F.2d 251, 255 (8th Cir. 1987) (explaining that "the admissibility of evidence is governed by federal standards" in a proceeding under the Assimilative Crimes Act). And the Court has serious concerns about the potential for "spark of life" evidence—which is concededly irrelevant to the ultimate issue of guilt—to unduly engender sympathy among the jury. That said, the Court will allow the United States to introduce a single photograph of A.B. as a live adult, which is "admissible to prove the identity of the victim." *United States v. Pettigrew*, 468 F.3d 626, 638 (10th Cir. 2006) (citation omitted). The picture must depict A.B. only. *See id.* (citation omitted) (holding that the "proffering of a photograph of the deceased victim, while living and posed with her family . . . needlessly pushes the prosecutorial envelope"). Additionally, the United States may elicit testimony from a family member of A.B. about (1) her age; (2) her Indian status; (3) her place of residence; and (4) her struggles with substance abuse. The family member may also authenticate the photograph of A.B. The family member may not, however, discuss A.B.'s status as a mother. Accordingly, Peterson's second motion in limine is **GRANTED IN PART** and **DENIED IN PART**.

### III.    Peterson's Third Motion in Limine

Peterson next moves for an order "excluding witnesses from the courtroom, prohibiting the disclosure of trial testimony to witnesses who are excluded from the courtroom, prohibiting excluded witnesses from accessing trial testimony, and prohibiting attorneys from speaking to witnesses about their testimony if it is interrupted by a break." ECF No. 61. Peterson seeks to apply this order "to all potential witnesses with the

exception of one case agent for each party." *Id.* The United States supports the motion, ECF No. 66 at 4, so the Court **GRANTS** Peterson's third motion in limine. FBI Special Agent Craig Heidenreich and FPD Investigator Chad Spahn are exempt from the Court's sequestration order.

## IV.    Peterson's Fourth Motion in Limine

Peterson finally moves for an order preventing the United States and its witnesses from using the term "victim" when referring to A.B., and from using the term "Defendant" when referring to Peterson. ECF No. 62. The United States opposes the motion. ECF No. 66 at 5. The Court agrees with Judge Brasel that the "term 'victim' is not inherently prejudicial. It is a term commonly used in the English language that does not by its nature connote guilt." *United States v. Lussier*, No. 18-cr-281 (NEB/LIB), 2019 WL 2489906, at *5 (D. Minn. June 15, 2019); *see United States v. Washburn*, 444 F.3d 1007, 1013 (8th Cir. 2006) (affirming use of "victim" during jury instructions). The Court's jury instructions will also "clarify the government's burden of proving all elements of the crime," which alleviates any potential prejudice from the use of the term "victim." *Washburn*, 444 F.3d at 1013. There is also no prejudice from calling Peterson the "defendant," which is an accurate factual description as to his current status in the criminal justice process. As discussed at the pretrial conference, the parties are permitted to use the terms "victim," "Ms. Boshey," "decedent," "Mr. Peterson," and "defendant" during trial. Peterson's fourth motion in limine is therefore **DENIED**.

## V.      The United States' Second Motion in Limine

The United States finally requests an order precluding Peterson from raising improper defenses, such as jury nullification and contributory negligence. ECF No. 57 at 5–6. Peterson does not oppose this motion. ECF No. 63 at 4. And his attorney reaffirmed a commitment at the pretrial conference not to elicit any improper defenses The Court **GRANTS** the United States' second motion in limine. *See United States v. Mayer*, No. 19-cr-96 (WMW/HB), 2021 WL 2434121, at *4–5 (D. Minn. June 15, 2021); *Munnell*, 344 N.W.2d at 887.

## ORDER

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The United States' First Motion in Limine (ECF No. 57 at 2–5) is **DENIED**;

2. The United States' Second Motion in Limine (ECF No. 57 at 5–6) is **GRANTED**;

3. Peterson's First Motion in Limine (ECF No. 59) is **GRANTED**;

4. Peterson's Second Motion in Limine (ECF No. 60) is **GRANTED in part** and **DENIED in part**;

5. Peterson's Third Motion in Limine (ECF No. 61) is **GRANTED**; and

6. Peterson Fourth Motion in Limine (ECF No. 62) is **DENIED**.

Dated: March 26, 2026                              *s/Laura M. Provinzino*
                                                                  Laura M. Provinzino
                                                                  United States District Judge

9