UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 25-4 (LMP/LIB)

UNITED STATES OF AMERICA,

Plaintiff,

v.

ERIC SCOTT PETERSON,

Defendant.

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

On December 17, 2024, Defendant Eric Peterson made a fateful decision with irrevocable consequences: he chose to drive drunk. After downing seven shots of alcohol on an empty stomach, Mr. Peterson lumbered to his truck, got behind the wheel, and set off from the Fortune Bay Casino down a dimly lit road on the Bois Forte Reservation. Less than a mile down the road from the casino entrance, Mr. Peterson was staring down at his phone. He never saw Amanda Boshey. Mr. Peterson—driving while intoxicated, with his eyes on his phone—struck and killed Ms. Boshey, a 38-year-old mother of five.

Following a four-day trial, a federal jury found Mr. Peterson guilty of criminal vehicular homicide. Sentencing data provides that the average length of imprisonment for similarly situated defendants is 85 months, and the medium length of imprisonment is 56 months. The government respectfully requests a sentence at a midpoint between the average and median sentences of such defendants: 72 months' imprisonment. Such a sentence accords with

directives of 18 U.S.C. § 3553, as it balances Mr. Peterson's mitigating history and characteristics with the aggravating circumstances related to the gravity of the harm and the need to afford adequate deterrence.

## THE OFFENSE CONDUCT

On a Tuesday in December after a full day of work, Mr. Peterson stopped home briefly and then drove to the Fortune Bay Casino. He left without eating any dinner. Once at the casino, Mr. Peterson headed straight for the slot machines. Between 5:44 p.m. and 7:29 p.m., Mr. Peterson ordered four separate rum and colas that collectively contained seven shots of alcohol. Mr. Peterson consumed each drink but ate no food.

At 8:46 p.m., Mr. Peterson left the casino, got into his 2002 Dodge Durango, and drove off. At 8:51 p.m., Mr. Peterson activated his cellphone while driving on Lake Vermillion Reservation Road and checked his messages—he had just received a text message from his girlfriend with a link to a TikTok video titled "Cat Rules."

Moments later, Mr. Peterson struck Ms. Boshey with his vehicle. Ms. Boshey was walking in the middle of the roadway, but the force of the collision threw her into a roadside ditch. Mr. Peterson never pulled over. He drove away without stopping to assess the situation or call law enforcement and report the incident.

During his drive home, Mr. Peterson stopped at a gas station to buy a pack of cigarettes. He texted his girlfriend, "I hit sumthing." She asked what he meant, and Mr. Peterson responded, "I heat a fucking dear . . . fuck" [sic].

That evening, law enforcement found Ms. Boshey body's in the ditch off Lake Vermillion Reservation Road. Debris was scattered about the roadway:




Ms. Boshey was unconscious and had no pulse. Paramedics responded to the scene and pronounced her deceased. A subsequent autopsy confirmed the cause of death was multiple blunt force injuries due to being a pedestrian struck by a motor vehicle. The injuries included a broken pelvic bone and femur as well as a fractured spine—her spinal cord was severed just below the neck.

Law enforcement arrived at Mr. Peterson's home early the next morning. They saw his damaged vehicle in the driveway—the Durango suffered

significant front-end damage, including a broken headlight. During a post-*Miranda* interview, Mr. Peterson admitted to being at the casino, having three or four alcoholic drinks without eating any food since lunchtime, and later returning home. When asked about the damage to his truck, Mr. Peterson said, "I think I hit a deer."

Mr. Peterson consented to a blood draw for purposes of a blood alcohol concentration analysis. A retrograde extrapolation of Mr. Peterson's blood indicated that at the time he left the casino—that is, moments before he struck and killed Ms. Boshey—he had a BAC level of somewhere between .079 and .217.

## SENTENCING RECOMMENDATION

In *Gall v. United States*, the Supreme Court set forth the appropriate sentencing methodology. 552 U.S. 38, 49–50 (2007). The district court should first calculate the advisory Sentencing Guidelines range. *Id.* at 49. After calculating a defendant's advisory Sentencing Guidelines range and hearing from the parties, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and make an individualized assessment based on the facts in arriving at an appropriate sentence. *Id.* at 49–50; *see also United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the appropriate Guidelines range, then evaluate whether a traditional departure

is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors.”).

### A. Sentencing Guidelines Calculation

To determine the appropriate advisory guidelines range, the Court must first resolve any outstanding objection to the offense level computation in the Presentence Investigation Report (“PSR”). Mr. Peterson objects to the PSR’s refusal to grant a downward adjustment for acceptance of responsibility.[1] For the reasons below, the objection should be overruled and the PSR guidelines computation should be adopted.

#### 1. Acceptance of Responsibility

Mr. Peterson objects to the lack of any downward adjustment for acceptance of responsibility. According to Mr. Peterson, he “told the truth on the stand during his trial” and “showed genuine remorse throughout the trial and into the present.” But Mr. Peterson also contested his guilt to the offenses charged and put the government to its burden at trial. Accordingly, he is not entitled to a reduction for acceptance of responsibility.

The application notes for U.S.S.G. § 3E1.1 address this issue directly: “This adjustment is not intended to apply to a defendant who puts the government to its burden at trial by denying the essential factual elements of

---

[1] Mr. Peterson raises several objections that have no bearing on the applicable guidelines provisions. The government endorses the language in the PSR and supports Probation's reasoning.

guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1, comment. (n.2). The application notes recognize the "rare situations" in which a defendant demonstrates acceptance of responsibility despite exercising her constitutional right to a trial, but those are generally limited to cases in which the defendant "goes to trial to assert and preserve issues that do not relate to factual guilt." *Id.*

Here, Mr. Peterson "put[] the government to its burden at trial by denying the essential factual elements of guilt." *Id.* He did not go to trial simply to "preserve issues that do not related to factual guilt." *Id.* Indeed, based on his defense at trial, the jury acquitted him of one of the counts charged. Accordingly, per the applicable guidelines provision, Mr. Peterson does not qualify for a downward adjustment for acceptance. The objection should be overruled.

**2. Guidelines Range**

Given the nature of the offense, the most applicable guideline section is U.S.S.G. § 2A1.4 (Involuntary Manslaughter). Therefore, the base offense level is 22. With a criminal history category of I, Mr. Peterson's advisory guidelines range is 41 to 51 months' imprisonment.

**B. Section 3553(a) Sentencing Factors**

Section 3553(a) requires the Court to analyze several factors, including "the nature and circumstances of the offense," "the history and characteristics

of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a). For the reasons below, the government respectfully requests a sentence of 72 months in prison.

### 1. Nature and Circumstances of the Offense

The nature and circumstances of the offense support a sentence above the advisory guidelines range. As proved at trial and affirmed by the conviction, Mr. Peterson killed Amanda Boshey when he struck her with his vehicle while driving negligently under the influence of alcohol. Mr. Peterson consumed seven shots of alcohol on an empty stomach and then chose to drive home. Worse still, while driving, he accessed his cellphone to watch a TikTok video sent by his girlfriend. As a result, he didn't see what was directly in front of him: Ms. Boshey in the middle of the roadway wearing a bright red coat. By his own admission, Mr. Peterson never saw her. His vehicle struck Ms. Boshey with such force that she flipped up onto the hood of his truck and careened off the road into the ditch. The force of the impact broke Ms. Boshey's pelvis and femur and severed her spine. But, according to Mr. Peterson, he had no idea. He thought he hit a deer.

He didn't hit a deer. He struck and killed Ms. Boshey, a 38-year-old mother of five. As Ms. Boshey's loved ones powerfully articulated, her death is

simply devastating. This tragedy could have been avoided. This tragedy should have been avoided. Mr. Peterson will be able to live with the consequences of his actions. Ms. Boshey does not have that luxury.

The nature and circumstances of the offense support a sentence of 72 months' imprisonment.

**2. History and Characteristics of the Defendant**

Mr. Peterson's history and characteristics are largely mitigating. His criminal history is limited to three misdemeanor offenses between 1994 and 1998: underage consumption of alcohol (1994), driving under the influence of alcohol (1995), and disturbing the peace (1998). Accordingly, Mr. Peterson has no criminal history points.

That said, Mr. Peterson had a problematic gambling addiction that, until recently, he refused to acknowledge. And he continues to minimize his problems with alcohol. According to Mr. Peterson, he has never consumed alcohol regularly and excessively, and he consumed alcohol only four times a month and never to intoxication. That does not comport with his offense conduct.

The incident here occurred on a Tuesday night—the middle of the work week. At trial, Mr. Peterson claimed that he was not feeling the effects of seven shots of alcohol. He is 5'9" and 155 pounds, and, as he admitted, the day of the fatal collision, he hadn't eaten anything since lunch. Further, he was

investigated in July 2021 for a separate drunk driving incident resulting in a collision with a parked vehicle.

### 3. Deterrence, Respect for the Law, and Protecting the Public

The Court must also consider the need for the sentence to afford adequate deterrence, promote respect for the law, provide just punishment, and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a). Here, just punishment and the need to promote respect for the law support a significant custodial sentence. As does the need to afford adequate deterrence. The dangers of drunk driving are severe and widely understood. Yet this problem remains disturbingly prevalent and persistent. To achieve the needed deterrent effect, this sentence must reflect the gravity of the harm.

### 4. The Need to Avoid Unwanted Disparities Among Similarly Situated Defendants

Judicial sentencing information analyzed by the U.S Probation Office reveals that between 2021 and 2025, there were eight defendants whose primary guideline was U.S.S.G. § 2A1.4 and a criminal history category of I (*n.b.* this figure excludes defendants who received a sentencing departure for substantial assistance under U.S.S.G. § 5K1.1). For those defendants, the average length of imprisonment imposed was 85 months and the median length of imprisonment was 56 months.

Accordingly, a sentence close to the low-end of the advisory guidelines range (41 months) would be substantially below the average and median lengths of imprisonment for similarly situated defendants. To avoid unwarranted disparities, the government respectfully suggests a sentence between the average and median sentences.

## CONCLUSION

Mr. Peterson chose to drive drunk. And his decision had tragic, devastating consequences. Five children lost a mother. Two parents lost a daughter. Seven siblings lost a sister. Mr. Peterson's thoughtless, careless decision has left a hole in the Boshey family that can never be refilled. The government respectfully asks this Court to issue a sentence commensurate with the gravity of the harm and sufficiently substantial to achieve the deterrent effect desperately needed. The government respectfully requests a sentence of 72 months in prison.

Dated: November 13, 2026

Respectfully Submitted,

DANIEL N. ROSEN
United States Attorney

*s/ Garrett S. Fields*
GARRETT S. FIELDS
DAVID M. CLASSEN
Assistant U.S. Attorneys